UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSÉ GASPAR ROSAS,

                    Petitioner,

        v.

JULIO HERNANDEZ et al.,

                    Respondents.

CASE NO. 2:26-cv-01873-LK

ORDER DENYING PETITION FOR
HABEAS CORPUS

This matter comes before the Court on Petitioner José Gaspar Rosas' petition for a writ of habeas corpus. Dkt. No. 1. For the reasons set forth below, the Court denies the petition.[1]

## I.    BACKGROUND

### A.    Immigration History

Gaspar Rosas is a native and citizen of Mexico "who entered the United States at [an] unknown place on an unknown date without inspection, admission, or parole." Dkt. No. 17 at 2. On December 14, 2011, he filed an application for a U nonimmigrant visa (Form I-918), with U.S.

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009).

ORDER DENYING PETITION FOR HABEAS CORPUS - 1

Citizenship and Immigration Services ("USCIS"). *Id.* USCIS approved the petition on October 1, 2012, and the visa expired on March 18, 2016. *Id.* On March 1, 2016, Gaspar Rosas filed "an application to register permanent residence/adjust status (Form I-485) with USCIS." *Id.* USCIS denied the petition in 2017. *Id.*

Between June 2014 and October 2023, Gaspar Rosas was arrested and convicted of various offenses in California, including battery on a spouse, obstructing a police officer, driving without a license, resisting arrest, driving with a suspended license, battery, and driving under the influence of alcohol. *Id.* at 2–4; Dkt. No. 15-1 at 4–5.[2]

On May 4, 2025, officers from U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") arrested Gaspar Rosas in Northridge, California during a "targeted operation[.]" Dkt. No. 17 at 4; *see also* Dkt. No. 15-2 (arrest warrant). When he was arrested, Gaspar Rosas "admitted that he entered the United States illegally, and that he is a native and citizen of Mexico." Dkt. No. 17 at 4. The same day, Gaspar Rosas was "served with a Notice to Appear ('NTA') charging him as inadmissible to the United States pursuant to section 212(a)(6)(A)(i)(I) of the Immigration and Nationality Act ('INA') [as] an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.*; *see also* Dkt. No. 15-4 at 2–3. Gaspar Rosas was ordered detained. Dkt. No. 15-3 at 2.

Gaspar Rosas appeared before an immigration judge ("IJ") on May 19, 2025, and his case "was continued for medical records to be filed." Dkt. No. 17 at 4. On May 20, 2025, Gaspar Rosas was transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.*

---

[2] Gaspar Rosas committed these driving-related offenses before he had the accident that resulted in the traumatic brain injury discussed in the next section. Dkt. No. 1 at 6; Dkt. No. 15-1 at 5. Although he contests Respondents' assertions regarding his past convictions, the Court finds that Respondents' assertions are supported by a declaration and records of sufficient reliability. Dkt. No. 15-1; Dkt. No. 17 at 2–4.

ORDER DENYING PETITION FOR HABEAS CORPUS - 2

On August 11, 2025, the IJ "conducted a forensic competency evaluation and found [Gaspar Rosas] was mentally incompetent to represent himself in immigration proceedings." *Id.* Consequently, the IJ appointed a qualified representative to represent him. *Id.* at 4–5; Dkt. No. 15-5 at 2. Gaspar Rosas, through counsel, conceded that he was removable as charged and filed applications for relief from removal. Dkt. No. 17 at 5.

On November 10, 2025, Gaspar Rosas had a *Franco-Gonzalez*[3] bond hearing where the Department of Homeland Security ("DHS") "had the burden to show that [he] was a danger to the community or a flight risk." *Id.* at 5. The IJ "found that DHS had met its burden, and that [Gaspar Rosas] was both a danger and a flight risk," and denied bond. *Id.*; Dkt. Nos. 15-6, 15-7. Gaspar Rosas appealed that decision to the Board of Immigration Appeal ("BIA"), and his appeal remains pending. Dkt. No. 17 at 5.

A hearing was conducted on February 4, 2026 regarding Gaspar Rosas' applications for relief from removal. *Id.* On February 25, 2026, an IJ denied his requests for relief and ordered him removed to Mexico. *Id.* Gaspar Rosas appealed that decision to the BIA, and his appeal remains pending. *Id.* at 6.

Gaspar Rosas, represented by counsel, filed this habeas petition on May 29, 2026. Dkt. No. 1. Respondents[4] filed a return, Dkt. No. 14, and Gaspar Rosas filed a traverse, Dkt. No. 18.

---

[3] The *Franco-Gonzalez* class action litigation resulted in a permanent injunction requiring that the federal government provide "Qualified Representatives" to a sub-class of unrepresented individuals detained by DHS who were not mentally competent to represent themselves in detention or removal proceedings, and providing bond hearings to another sub-class within 180 days after being identified. *See Franco-Gonzales v. Napolitano*, No. CV-10-02211-DMG-DTBx, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) (certifying class); *Franco-Gonzalez v. Holder*, No. CV 10-02211-DMG-DTBx, 2013 WL 3674492 (C.D. Cal. Apr. 23, 2013) (granting permanent injunction); *Franco-Gonzalez v. Holder*, No. CV 10-2211-DMG-DTBx, 2013 WL 8115423, at *1–2 (C.D. Cal. Apr. 23, 2013) (judgment and permanent injunction); *Franco-Gonzalez v. Holder*, No. CV-10-02211-DMG-DTBx, 2014 WL 5475097 (C.D. Cal. Oct. 29, 2014) (setting forth further details on permanent injunction including screening system and evaluation standards).

[4] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents

ORDER DENYING PETITION FOR HABEAS CORPUS - 3

Respondents then filed a surreply to "strike material contained in Petitioner's Traverse and Response to Return (Dkt. No. 18), Declaration of Rowan G. Laidlaw, (Dkt. No. 19), and the Second Declaration of Petitioner (Dkt. No. 20)." Dkt. No. 22 at 1.

**B.    Health Care While at the NWIPC**

In May 2023, Gaspar Rosas was involved in a car accident, and as a result, he suffered a traumatic brain injury ("TBI") and has a "ventriculoperitoneal (VP) shunt which drains fluid from his brain to the abdomen to prevent fluid pressure build-up in the brain." Dkt. No. 1 at 6–7. The TBI also caused a seizure disorder. *Id.* at 8. Gaspar Rosas wears a helmet "constantly" to protect his head in case he falls during a seizure. Dkt. No. 2 at 6.

Since his transfer to the NWIPC on May 20, 2025, Gaspar Rosas has been in the care of the ICE Health Service Corps ("IHSC"), "which is comprised of a multidisciplinary workforce consisting of U.S. Public Health Service Commissioned Corps officers, federal civil servants, and contract health professionals." Dkt. No. 16 at 2. While he has been at the NWIPC, Gaspar Rosas has had 13 reported seizures, severe headaches, abdominal pain, loss of sleep, and loss of consciousness. Dkt. No. 1 at 3. According to Gaspar Rosas, prior to his detention, he experienced only two seizures and managed his seizure symptoms not through regular medication, but "by practicing stress management, recognizing early signs and using emergency medications to stop them, and being surrounded by supportive family and friends who also were trained to recognize signs of seizures." *Id.* at 9.

Since he has been at the NWIPC, Gaspar Rosas has been taken to the emergency room 14 times. *Id.* at 3. On September 19, 2025, he was brought to the emergency room for "dizziness and

---

often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

ORDER DENYING PETITION FOR HABEAS CORPUS - 4

rapid palpitations." *Id.* at 10; Dkt. No. 11-4 at 19. The neurologist suspected that he "may have had a syncopal episode instead of a seizure" and recommended a CT scan, which was conducted. Dkt. No. 11-4 at 19–20. He was discharged to the NWIPC on the same day. Dkt. No. 1 at 10. On September 21, 2025, Gaspar Rosas was brought back the emergency room after he "felt lightheaded and dizzy and then woke up on the floor"; it was "unclear if he had a seizure or not." Dkt. No. 11-4 at 32. Gaspar Rosas had an inpatient consultation with a neurologist, who recommended starting him on Keppra, an anti-seizure medication also known as levetiracetam, at 500 milligrams twice a day. *Id.* at 32, 36; Dkt. No. 1 at 10. A chart note stated that Gaspar Rosas was "safe for discharge" and that he "will follow-up with neurology as an outpatient." Dkt. No. 11-4 at 36.

On November 16, 2025, Gaspar Rosas was brought to the emergency room again for reports of a headache near his VP shunt. Dkt. No. 1 at 11. A "CT head and shunt series" were conducted and determined to be "unremarkable." Dkt. No. 11-4 at 48. The physician recommended Tylenol, ibuprofen, and a primary care evaluation for "possible prescription of migraine medications." *Id.* at 48–49. Gaspar Rosas was "discharged in good condition." *Id.* at 49. He was brought back to the emergency room the next day "after experiencing a 16-minute long seizure at the ICE detention center." Dkt. No. 1 at 11. The medical records noted that since his last emergency room visit in September, he "[h]a[d] not had any significant associated episodes recently." Dkt. No. 11-4 at 57. The physician increased his Keppra dose to 750 mg twice a day and recommended follow up with a neurologist in an outpatient setting or with the hospital neurologist. *Id.* at 63.

On November 20, 2025, Gaspar Rosas was brought to the emergency room after experiencing a two-minute seizure at the detention center. Dkt. No. 1 at 11; Dkt. No. 11-4 at 78. The chart notes states: "According to medics, pt may have missed his doses of Keppra on the 18th

ORDER DENYING PETITION FOR HABEAS CORPUS - 5

and 19th." Dkt. No. 11-4 at 78. The emergency room doctor increased his Keppra prescription to 1000 mg twice a day. *Id.* at 81.

On November 26, 2025, Gaspar Rosas was brought to Franciscan Heart and Vascular Associates at St. Joseph "for a workup related to syncope." Dkt. No. 1 at 11. The doctor recommended a Zio monitor for 28 days. Dkt. No. 11-2 at 80. IHSC "received this information on January 8, 2026 and submitted a referral for this to occur on January 22, 2026." Dkt. No. 16 at 5.[5] The Zio monitor was completed in March 2026. Dkt. No. 1 at 11.

On December 14, 2025, Gaspar Rosas returned to the emergency department after reportedly experiencing two seizures. Dkt. No. 1 at 12. The hospital neurologist recommended increasing his Keppra dosage to 1500 mg twice a day for 90 days and recommended that he follow up with neurology as an outpatient regarding the sleepiness he reported experiencing from Keppra. Dkt. No. 11-2 at 64, 67. The emergency room doctor wrote that he "need[ed] to follow up with Neurology ASAP for recheck to ensure that [his] seizure workup is completed to hopefully avoid further breakthrough seizures." *Id.* at 69. Gaspar Rosas was taken to the emergency department again on December 24, 2026 after experiencing syncope "with a strong headache." Dkt. No. 1 at 12. A "CT head shunt series" and chest x-ray were "unremarkable." Dkt. No. 11-2 at 51. The emergency room doctor contacted neurosurgery "to review the case and see if any adjustments need[ed] to be made to his VP shunt." *Id.* Neurosurgery "ha[d] no further recommendations" at the time, noting that the "shunt [wa]s working appropriately" and was "unlikely to be contributing to his seizures and headaches." *Id.* Gaspar Rosas also received a "cardiac workup EKG." *Id.* at 52.

On January 16, 2026, Gaspar Rosas "sought medical advice about his concern relating to 'fluxuations [sic] in the timing of the medication delivery via pill line.'" Dkt. No. 1 at 13. He

---

[5] The reason for the delay between when the provider recommended the Zio monitor and when IHSC received that information is not explained in the record.

ORDER DENYING PETITION FOR HABEAS CORPUS - 6

continued to experience dizziness and headaches from January through March, 2026. *Id.* On March 18, 2026, he refused to go to a scheduled outpatient neurology appointment. *Id.* According to Gaspar Rosas, he had a "specialist appointment in October or November of 2025" but was "never seen by the specialist because when [he] arrived for the appointment, they needed [his] mother[']s signature . . . because she is [his] legal guardian for medical issues[.]" Dkt. No. 2 at 10. Gaspar Rosas was able to attend a radiology appointment a few days later and "did not run into any issues related to a medical authorization." Dkt. No. 1 at 14.

He returned to the emergency department on May 10, 2026 after experiencing two seizures. *Id.* His Keppra level was "undetectable" on that day. Dkt. No. 11-3 at 25. The next day, he was taken to the emergency department again after experiencing a 15-minute seizure. Dkt. No. 1 at 14–15. A "CT head and shunt series [were] unremarkable." Dkt. No. 11-3 at 25. Gaspar Rosas experienced an 11-minute seizure on May 18, 2026. Dkt. No. 1 at 15. At the emergency room on that day, a neurologist at the hospital suggested adding Depakote "for better control" and to "have outpatient follow up with neurology[.]" Dkt. No. 11-3 at 24. The neurologist also noted, "Per our notes, he is on 1500 mg [twice per day] of Keppra but ICE detention reports he was on 750 mg [twice per day]." *Id.*; *id.* at 25 (noting that ICE medical staff was "unsure exactly why Keppra was reduced"). Gaspar Rosas was again prescribed 1,500 mg of Keppra twice per day for 90 days. *Id.* at 27. Gaspar Rosas states he experienced two more seizures on May 19 and a five-minute seizure on May 23. Dkt. No. 1 at 15–16.

Gaspar Rosas also experiences headaches and severe stomach pain, which he attributes to his VP shunt not being properly cleaned. *Id.* at 16. He does not believe that ICE "takes his complaints of pain seriously"; instead, "[t]hey continue to prescribe pain killers and digestion medication that does not help." *Id.* at 17.

ORDER DENYING PETITION FOR HABEAS CORPUS - 7

Gaspar Rosas was placed in medical segregation from May 23, 2026 to June 1, 2026. *Id.*; Dkt. No. 20 at 5. Dr. Wang, a physician with IHSC, states that he was admitted to the medical health unit "for closer monitoring due to multiple seizures and low medication concentration levels in [his] blood, levels which should not have occurred had [he] been taking his medication as prescribed and provided." Dkt. No. 16 at 7. "His blood level for his seizure medication achieved therapeutic level within five-to-six days under directly observed medication administration." *Id.* While in medical segregation, Gaspar Rosas was not allowed to leave his cell. Dkt. No. 1 at 17. The cell is 8 feet wide by 12 feet long, with a surveillance camera mounted above the toilet. *Id.* at 18. He also states that as of May 29, 2026, he had not received lotion for a foot fungus, and he was required to ask permission to "take a shower, have a fresh pair of clothing, or eat a snack." *Id.*

## II.    DISCUSSION

Gaspar Rosas contends that Respondents have violated his due process rights by subjecting him to "unconstitutionally punitive conditions of confinement" due to "medical neglect" at the NWIPC. Dkt. No. 1 at 41.[6] Respondents assert that Gaspar Rosas' detention is not punitive and that "habeas relief is inappropriate for [his] claims concerning the conditions of his confinement, which must be brought under the Civil Rights Statute." Dkt. No. 14 at 2.

**A.    The Scope of the Record**

As noted above, Respondents filed a surreply asking the Court to "strike material contained in Petitioner's Traverse and Response to Return (Dkt. No. 18), Declaration of Rowan G. Laidlaw, (Dkt. No. 19), and the Second Declaration of Petitioner (Dkt. No. 20)." Dkt. No. 22 at 1. Respondents assert that in those filings, Gaspar Rosas raises allegations for the first time "concerning (1) his current assignment to the Northwest ICE Processing Center's Special

---

[6] Gaspar Rosas also raised claims under Section 504 of the Rehabilitation Act and the Administrative Procedure Act, *id.*, which he withdrew in his traverse, Dkt. No. 18 at 2.

ORDER DENYING PETITION FOR HABEAS CORPUS - 8

Management Unit/Restrictive Housing Unit, and (2) the use of a metal detector." *Id.* According to Respondents, Gaspar Rosas did not raise those issues in his petition or his first declaration. *Id.* Respondents request that the Court strike the following material:

**Traverse (Dkt. No. 18):**

- Page 2, Lines 15 – 21 (ending at "*Id.*, ¶ 5")

- Page 3, Lines 6-23

- Page 7, Line 10 ("twice, including at present.")

- Page 7, Line 11 ("and he is currently serving a 60-day sanction in disciplinary segregation")

- Page 13, Line 20 (starting at "Further,") – Line 22

**Declaration of Rowan G. Laidlaw (Dkt. No. 19):**

- Dkt. No. 19-3, Exhibit D, ECF pages 4 and 5

**Second Declaration of Gaspar Rosas (Dkt. No. 20):**

- Paragraph 15 ("They told me I have to be in segregation for 60 days, until July 17, 2026.")

- Paragraphs 16–17

- Paragraph 18

- Paragraph 19

- Paragraphs 21-37

Dkt. No. 22 at 2 (footnote omitted).

"[T]he general rule is that [litigants] cannot raise a new issue for the first time in their reply briefs." *United States v. Birtle*, 792 F.2d 846, 848 (9th Cir. 1986) (quoting *Thompson v. Comm'r*, 631 F.2d 642, 649 (9th Cir. 1980)). "The unfairness of such a tactic is obvious. Opposing counsel is denied the opportunity to point to the record to show that the new theory lacks legal or factual support." *Sophanthavong v. Palmateer*, 378 F.3d 859, 872 (9th Cir. 2004).

ORDER DENYING PETITION FOR HABEAS CORPUS - 9

Here, Gaspar Rosas raised new issues in his traverse and supporting declarations that he did not raise in his petition and first declaration. Specifically, he alleges in his second declaration that he was placed in disciplinary segregation on May 16, 2026 and told that he would have to be in segregation for 60 days. Dkt. No. 20 at 4. In his petition and first declaration on May 29, 2026, Gaspar Rosas did not include allegations about disciplinary segregation. Dkt. Nos. 1, 2. Instead, he contended in his first declaration that he had been in *medical* segregation since coming back from the emergency department "after experiencing a seizure on May 23, 2026," and he was told that he would be in medical segregation for several more weeks. Dkt. No. 2 at 14. His allegations about disciplinary segregation are materially different than those about medical segregation. It was therefore improper for Gaspar Rosas to raise new arguments about disciplinary segregation for the first time in his reply. Accordingly, the Court strikes paragraphs 15–17 from his second declaration, Dkt. No. 20 at 4. The Court also strikes paragraphs 21 through 37, *id.* at 5–8, because although those paragraphs raise allegations about events that occurred after Gaspar Rosas filed his petition and first declaration, he did not file an amended petition, and Respondents have had no opportunity to respond to those allegations.

The Court also grants Respondents' request to strike Docket Number 19-3, pages 4–5, because those exhibits contain new allegations about the use of a metal detector to which Respondents have had no chance to respond. Again, Gaspar Rosas did not file an amended petition to include those issues. *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief."); *Thompkins v. McKune*, 433 F. App'x 652, 660 (10th Cir. 2011) ("[A]rguments raised for the first time in a traverse are not properly presented to the district court[.]").

ORDER DENYING PETITION FOR HABEAS CORPUS - 10

For the same reasons, the Court grants Respondents' request to strike the portions of the traverse that rely on the new declarations and exhibits, including the following pages and line numbers from Docket Number 18:

- Page 2, Lines 15–21 (ending at "*Id*, ¶ 5")

- Page 3, Lines 6–23

- Page 8, Line 10 ("twice, including at present.")[7]

- Page 8, Line 11 ("and he is currently serving a 60-day sanction in disciplinary segregation")

- Page 14, Line 19 (starting at "Further,") – Line 22

However, the Court does not strike paragraph 18 of Gaspar Rosas' second declaration because as Respondents note, Dkt. No. 22 at 2 n.2, Gaspar Rosas raised a similar—or possibly the same—shower-related allegation in his petition, Dkt. No. 1 at 15. The Court also declines to strike paragraph 19 from Gaspar Rosas' second declaration because the allegations therein—about the effect of segregation on Gaspar Rosas' mental health—are similar to allegations Gaspar Rosas raised in his first declaration and petition. *Compare* Dkt. No. 20 at 5, *with* Dkt. No. 1 at 18–19; Dkt. No. 2 at 16.

**B.    Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

---

[7] Respondents' surreply sometimes refers to page numbers at the bottom of the page of the traverse and sometimes refers to page numbers in the header. Dkt. No. 22 at 2. For consistency, the Court uses the page numbers in the header.

ORDER DENYING PETITION FOR HABEAS CORPUS - 11

Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**C.    Due Process Claim**

Gaspar Rosas contends that Respondents have violated his due process rights by subjecting him to unconstitutionally punitive conditions of confinement. Dkt. No. 1 at 25. Respondents counter that his "detention is not punitive because it is reasonably related to legitimate governmental objectives." Dkt. No. 14 at 6. Respondents also argue that Gaspar Rosas cannot challenge the conditions of his confinement through a habeas petition—including "the cleanliness of his room, access to the outside, and his medical care"—because those issues "are not justiciable in habeas." *Id.* at 9. Gaspar Rosas does not dispute that general principle, but he argues that the Court has jurisdiction over the question of whether the conditions of his detention are "unconstitutionally punitive" such that release is warranted. Dkt. No. 18 at 2.

ORDER DENYING PETITION FOR HABEAS CORPUS - 12

Even assuming without deciding that habeas is an appropriate mechanism for Gaspar Rosas to challenge his conditions of confinement, he has not shown that those conditions are unconstitutionally punitive. "[A] restriction is punitive where it is intended to punish, or where it is excessive in relation to its non-punitive purpose[.]" *Jones v. Blanas*, 393 F.3d 918, 933–34 (9th Cir. 2004) (citation modified). A civil detainee "is entitled to more considerate treatment than his criminally detained counterparts." *Id.* at 932 (citation modified). Accordingly, if conditions of civil confinement are equivalent to or more restrictive than criminal detention or civil post-commitment detention, they are presumptively punitive. *King v. Cnty. of Los Angeles*, 885 F.3d 548, 557 (9th Cir. 2018) (citing *Jones*, 393 F.3d at 932–33). If the presumption applies, the burden shifts to the government to show "(1) legitimate, non-punitive interests justifying the conditions of the detainee's confinement and (2) that the restrictions imposed are not excessive in relation to these interests." *Id.* (citation modified). Both parties apply the *Jones* test, but they disagree as to the outcome. Dkt. No. 1 at 27–32; Dkt. No. 14 at 7–9.

Gaspar Rosas contends that the conditions of his confinement are punitive because he "has not been seen by a neurology specialist since being detained, despite multiple emergency room doctors recommending he be seen by outpatient neurology." Dkt. No. 1 at 28. He argues that "ICE has been on notice since September 2025 that [he] needs to be seen by a neurologist in order to determine the cause of his seizures and ensure he gets the appropriate treatment and medication for his recurring seizures," but ICE has failed to have him seen by a neurologist. *Id.* Dr. Eddie Wang, the Clinic Director at NWIPC, notes that although IHSC does not have an on-staff neurologist, it "works with outside providers to ensure individuals are able to continue to receive specialized care while in immigration custody." Dkt. No. 16 at 3. To that end, IHSC scheduled two appointments for Gaspar Rosas with a neurologist—on March 18, 2026 and May 6, 2026— but on both occasions, Gaspar Rosas "refused to consent for specialists' assessment." *Id.* Although

Gaspar Rosas states that he believes he needs his mother's signature for such care, he provides no documentations supporting this assertion, and has received care in the emergency room and by other specialists without obtaining her signature. *See, e.g.*, Dkt. No. 1 at 11; Dkt. No. 11-2 at 80; Dkt. No. 11-4 at 19–20, 32, 36. Given Gaspar Rosas' refusal to attend appointments with an outpatient neurologist, the Court cannot find that Respondents have subjected him to punitive conditions with respect to this issue.

Gaspar Rosas also asserts that ICE has disregarded "his complaints of pain around his VP shunt, headaches, and abdominal pain." Dkt. No. 1 at 30. He contends that he has complained about "severe headaches," which "can be signs of an improperly functioning shunt," but "ICE medical" and emergency room doctors have not taken those complaints seriously. *Id.* However, multiple notes from emergency room providers document that imaging was conducted and the shunt was functioning properly and unlikely to be causing his headaches. Dkt. No. 11-2 at 51; Dkt. No. 11-3 at 25; Dkt. No. 11-4 at 48. Gaspar Rosas' disagreement with those medical opinions does not show that he is being held in punitive conditions.

Gaspar Rosas also contends that he "does not have access to rescue medicine himself," so when he has a seizure, "he must wait, without help, for the medical staff to arrive, which can take up to 30 minutes." Dkt. No. 1 at 29. As a result, he "is experiencing his seizures without the standard immediate care that is needed to reduce seizure severity," which results in "longer, more painful, and more damaging seizures for [him]." *Id.* at 29–30. He also contends that his seizures have increased while in detention, and he "has had multiple episodes of status epilepticus, which is a life threatening condition." *Id.* at 30. He asserts that "ICE's failure to provide adequate medical care is increasing [his] chance of death, brain death and dysregulation of cardiorespiratory system leading to organ failure." *Id.* (citing Dkt. No. 6 at 2). According to Dr. Laura Whitehall, a Family Medicine Practicing Physician, "[r]escue medications are fast acting prescription drugs used at the

ORDER DENYING PETITION FOR HABEAS CORPUS - 14

first signs of seizure to stop prolonged seizures." Dkt. No. 6 at 4. "A patient with seizure disorder should have quick access to rescue medication, such as midazolam or other benzodiazepine." *Id.* But Gaspar Rosas does not cite any evidence in the record to show that any treating physician has recommended that he carry rescue medication or have quick access to such medication. Accordingly, the Court cannot conclude that he has been subjected to punitive conditions of confinement without that medication. Moreover, as Respondents assert, even if Gaspar Rosas "could show a Fifth Amendment violation" with respect to this issue, "he does not establish that such a violation would justify immediate release, as opposed to injunctive relief that would leave him detained while ameliorating any unconstitutional conditions at the NWIPC." Dkt. No. 14 at 12 (quoting *Ortiz v. Barr*, No. 20-cv-497, 2020 WL 13577427, at *7 n.8 (W.D. Wash. April 10, 2020)); *see also Doe v. Bostock*, No. 24-cv-0326, 2024 WL 3291033, at *8 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, 2024 WL 2861675 (W.D. Wash. June 6, 2024).

Gaspar Rosas contends that "[t]he records also indicate repeated medication mismanagement by the ICE medical staff." Dkt. No. 1 at 29. Specifically, he contends that "ICE reportedly was administering half of the prescribed dose of Keppra, [his] anti-seizure medication, for an unknown reason." *Id.* The records support this contention. Dr. Whitehall notes that "[a]t an Emergency Department visit in November, it was recommended that [Gaspar Rosas'] Keppra be increased to 1000mg twice a day." Dkt. No. 6 at 3. "On December 14, 2025, after another Emergency Department visit, the doctor increased [his] Keppra to 1500mg twice a day." *Id.* However, "[o]n May 18, 2026, notes show that [he] was only receiving Keppra 750 mg twice a day in detention," which "is a significant difference, getting half the dosage he was prescribed for the last 5 months." *Id.* According to Dr. Whitehall, "[t]his discrepancy between dosing could have contributed to the increased frequency of seizures over the last few months." *Id.* Dr. Srirama Josyula, a physician specializing in Internal Medicine, agrees that "dosing errors can precipitate

breakthrough seizures." Dkt. No. 3 at 2. Dr. Josyula notes that Gaspar Rosas experienced two seizures on May 10, 2026, a 15-minute seizure on May 11, 2026, and an 11-minute seizure on May 18, 2026 before ICE planned to "return levetiracetam to 1500 mg twice daily[.]" *Id.* at 1.

Dr. Wang provides no explanation for this serious medication error. *See generally* Dkt. No. 16. According to Dr. Wang, when Gaspar Rosas was assessed in the emergency room on May 10, 2026, his Keppra medication "was undetectable in his system, suggesting [he] did not take his provided prescription medication." *Id.* at 6. Dr. Wang states that Gaspar Rosas was admitted to the medical health unit "for closer monitoring due to multiple seizures and low medication concentration levels in [his] blood, levels which should not have occurred had [he] been taking his medication as prescribed and provided." *Id.* at 7. "His blood level for his seizure medication achieved therapeutic level within five-to-six days under directly observed medication administration." *Id.* Dr. Wang also lists dates on which Gaspar Rosas has refused his medication. *Id.* at 8.[8]

While the months-long medication dosing error is inexcusable, the Court does not find that Gaspar Rosas' care at the NWIPC "has been so deficient as to make his confinement punitive in violation of due process." *Palacios Obregon v. Blanche*, No. C26-0484-KKE, 2026 WL 1223424,

---

[8] He lists the following: "June 29, 2025 (hydroxyzine pamoate), September 25, 2025 (Keppra (Levetiracetam)), September 26, 2025 (Keppra (Levetiracetam)), September 27, 2025 (Keppra (Levetiracetam)), November 18, 2025 (Keppra (Levetiracetam)), November 18, 2025 (Levetiracetam), December 16, 2025 (Levetiracetam), December 24, 2025 (Levetiracetam), January 9, 2026 (Levetiracetam), February 12, 2026 (Levetiracetam), February 13, 2026 (Levetiracetam), February 28, 2026 (Levetiracetam), March l, 2026 (Levetiracetam), March 2, 2026 (Levetiracetam), April 2, 2026 (Lidocaine), May 17, 2026 (Lacosamide), May 18, 2026 (Lacosamide and MiraLAX), May 19, 2026 (Lacosamide [(the Court notes that this may have been Depakote, *see* Dkt. No. 16 at 3)], Levetiracetam, Cholecalciferol, polyethylene glycol, and multivitamin), May 20, 2026 (Triamcinolone), May 21, 2026 (MiraLAX), May 22, 2026 (MiraLAX and Triamcinolone), May 24, 2026 (Multivitamin), May 25, 2026 (Divalproex sodium), May 30, 2026 (Triamcinolone), May 31, 2026 (Triamcinolone)," all of which were "verified with refusal forms[.]" *Id.* at 8. Dr. Wang also states that Gaspar Rosas refused to allow blood work to be done on April 28, 2026, refused dental examinations in May 2025 and May 2026, refused an annual physical examination on May 5, 2026, refused to review medical symptoms with IHSC staff on May 21, 2026, and refused to allow IHSC to obtain his vitals on May 27 and 28, 2026. *Id.* at 8–9. Gaspar Rosas denies all these contentions, asserting that he always takes his medicine and that he suspects IHSC confused him for his neighbor, who also has "Rosas" in his last name, in recording that medications were refused. *See generally* Dkt. No. 20. Even if this were true, it does not make his detention punitive for the reasons that follow.

ORDER DENYING PETITION FOR HABEAS CORPUS - 16

at *5 (W.D. Wash. May 5, 2026). Gaspar Rosas compares his situation to the detainee in *Sorio v. Hermosillo*, No. 2:25-CV-02492-TL, 2026 WL 413530 (W.D. Wash. Feb. 13, 2026). Dkt. No. 1 at 28. In *Sorio*, the court found "the unique facts" and "extreme consequences" in that case—involving "a pattern of failures of care" that resulted in the partial amputation of a detainee's foot—so excessive as to render the conditions of the detention unconstitutionally punitive. 2026 WL 413530, at *10–12. There, NWIPC's medical staff repeatedly ignored the detainee's requests for care, refused to provide needed antibiotics, continued to ignore his pleas as his condition worsened, and treated him with medication for the wrong condition, possibly exacerbating his condition. *Id.* at *10. Sorio entered detention in good health, but after eight months in detention suffered "two partial foot amputations," developed "ulcerative colitis . . . , acute blood loss anemia, [and] a kidney injury," and experienced "dramatic unintended weight loss." *Id.* at *1. This case is more like *Palacios Obregon*, where the petitioner's "medical team . . . made consistent, albeit not always successful, efforts to treat what has proven to be a treatment-resistant condition with symptoms that wax and wane over time." 2026 WL 1223424, at *6 (citation modified). As set forth above, the NWIPC medical staff provided Gaspar Rosas with care, and repeatedly transported him to the emergency room when needed. Although Gaspar Rosas has not seen an outpatient neurologist during his detention, he refused to attend his two appointments with neurologists, Dkt. No. 16 at 3, and he has had numerous neurology consultations at the hospital, Dkt. No. 11-2 at 51; Dkt. No. 11-3 at 24; Dkt. No. 11-4 at 19–20, 32, 36. After he experienced several seizures in May 2026, NWIPC medical staff placed him in medical segregation and "achieved therapeutic level" of his medication, reflecting that NWIPC is not unable to provide adequate medical care, as Gaspar Rosas contends. *Id.* Accordingly, while Gaspar Rosas' health care at the NWIPC has been deficient with regard to the months-long administration of the wrong dose of Keppra, the Court does not find that his health care has been punitive. *Davis v. Wessel*, 792 F.3d 793, 802 (7th Cir. 2015)

ORDER DENYING PETITION FOR HABEAS CORPUS - 17

("being negligent or making an accidental mistake . . . is constitutionally insufficient" to establish punitive confinement). Furthermore, considering that the NWIPC is capable of providing Gaspar Rosas with the necessary care, he does not establish that immediate release is the appropriate remedy for any deficiencies, as opposed to injunctive relief that would address those deficiencies.

Gaspar Rosas also contends that his "confinement in medical segregation is an example of 'conditions similar to, or more restrictive than those in which criminal counterparts are held.'" Dkt. No. 1 at 31 (quoting *King*, 885 F.3d at 557). However, he is no longer in medical segregation. Dkt. No. 20 at 5. Respondents contend that even if the presumption of punitive conditions applies, "the facts here rebut the presumption that Petitioner's detention is punitive." Dkt. No. 14 at 7. According to Respondents, Gaspar Rosas' detention is justified as reasonably related to the government's interest in enforcing its immigration laws and ensuring that individuals appear for their removal proceedings. *Id.* They also assert that Gaspar Rosas "was found to be a danger to the community, so his detention is clearly 'reasonably related' to the government's interest in protecting the public." *Id.* (quoting *Martinez v. Clark*, 124 F.4th 775, 786 (9th Cir. 2024)). Respondents further argue that Gaspar Rosas "has not demonstrated that IHSC's medical treatment constitutes an express intent to punish him," and his placement in the medical health unit, segregated from the general population, was necessary "for the purpose of closer monitoring due to his multiple seizures and low medication concentration levels in his blood." *Id.* at 8.

Gaspar Rosas responds that the government's purpose "could have been carried out by enrolling [him] in an Alternative to Detention program, such as requiring him to attend ICE check ins, or wear an ankle monitor." Dkt. No. 18 at 11. However, as Respondents note, the "wide range of 'judgment calls' that meet constitutional and statutory requirements [for federal detention] are confided to officials outside of the Judicial Branch of Government." Dkt. No. 14 at 8 (quoting *Bell v. Wolfish*, 441 U.S. 535, 562 (1979)). Gaspar Rosas' desire for an alternative to detention does

ORDER DENYING PETITION FOR HABEAS CORPUS - 18

not show that his conditions are punitive. Rather, his placement in medical segregation was "reasonably related to a legitimate governmental objective" to closely monitor and stabilize his medication levels, and thus did not "amount to punishment." *Wolfish*, 441 U.S. at 539 (citation modified).

Gaspar Rosas also contends that he could obtain better medical care in the community if he is released. Dkt. No. 18 at 11. However, the fact that Gaspar Rosas "would almost certainly receive better care in the community" does not show that he is being held under punitive conditions. *Saechao v. Scott*, No. 2:26-cv-00548-TMC, 2026 WL 626765, at *6 (W.D. Wash. Mar. 5, 2026).

Accordingly, the Court does not conclude that Gaspar Rosas is being held in punitive conditions or that he is entitled to release.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Gaspar Rosas' petition for habeas corpus. Dkt. No. 1.

Dated this 28th day of July, 2026.

Lauren King
United States District Judge

ORDER DENYING PETITION FOR HABEAS CORPUS - 19